ORDERED.

Dated: **April 02, 2026**

_____
Lori V. Vaughan
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Christopher Joe Young, | ) | Case No. 6:24-bk-03698-LVV |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |

### MEMORANDUM OPINION ON CROSS MOTIONS FOR SUMMARY JUDGMENT AS TO CREDITOR'S OBJECTIONS TO CLAIM OF EXEMPTIONS

While Florida's homestead exemption is broad and unlimited in amount, it is not immune from attack. Florida courts have frequently held that homestead property cannot be used to shield funds obtained through fraud or egregious conduct. Using this exception, creditor argues that a minister cannot exempt property as homestead when the church paid all property expenses (mortgage and other costs) as a parsonage through funds the church generated from illegal activity. The Court disagrees. The fraud exception is designed to prevent unjust enrichment, not punish bad behavior. Debtor received the parsonage as part of his compensation from the church and not through any fraud or egregious conduct that deprived creditors of their funds. Creditor's objection must be overruled.

1

Undisputed Facts

Soul Quest Church of Mother Earth, Inc. ("Soul Quest") was established in 2016 as a § 501(c)(3) non-profit church exempt from taxation by the Internal Revenue Service under the Internal Revenue Code.[1] Upon its incorporation, Christopher Joe Young ("Debtor") was appointed minister and president.[2] From inception until it stopped operating, Debtor oversaw all of Soul Quest's operations.[3]

Soul Quest held itself out as a ministry of shamanic healing and plant medicine which, through its retreats, provided opportunities for safe, therapeutic use of plant medicine like ayahuasca for spiritual growth.[4] Ayahuasca is a tea or brew created by combining a mixture of plants found in the Amazon region of South America. The active ingredient in ayahuasca is dimethyltryptamine ("DMT") which is a hallucinogenic. Ayahuasca is used by certain indigenous tribes for spiritual or religious ceremonies. Some groups have tried to replicate this experience in the United States.

In the United States, DMT is a Schedule 1 substance under the Controlled Substances Act making it illegal to manufacture or distribute without an exemption. Still, the plants used to make ayahuasca are legally imported. In 2017, Soul Quest petitioned the Drug Enforcement Agency for a religious exemption under the Religious Freedom Restoration Act claiming that ayahuasca was an important part of its religious practices.[5] The DEA denied Soul Quest's petition prompting Soul Quest to sue, but these efforts were unsuccessful. Soul Quest never received an exemption from

---

[1] Doc. No. 50, Exh. A (Affidavit of Christopher Young)
[2] Doc. No. 50, Exh. A (Affidavit of Christopher Young and attached Exh. 1)
[3] Doc. No. 54, Exh. A (June 2025 Young Depo. Tr. at 26:17- 24)
[4] Soul Quest filed for relief under chapter 11 of the Bankruptcy Code on July 15, 2024. *Soul Quest Church of Mother Earth Inc., d/b/a Soul Quest Ayahuasca Church of Mother Earth Inc.*, Case No. 6:24-bk-03612-LVV (Bankr. M.D. Fla. filed July 15, 2024)("Soul Quest Bankruptcy). *See* Soul Quest Bankruptcy Doc. No. 4, Chapter 11 Case Management Summary. For the reasons stated in open court, the Court dismissed the Soul Quest Bankruptcy case on July 30, 2024.
[5] Doc. No. 54, Exh. E.

federal law to use ayahuasca.[6] Despite this, there is no record evidence that Soul Quest or Debtor have ever been charged or convicted of a crime associated with the distribution of ayahuasca.

In 2018, Brandon Kyle Begley attended a weekend retreat at Soul Quest.[7] While there, he consumed ayahuasca as part of Soul Quest's "sacraments" and became ill. He passed away a short time later at the hospital. John Paul Begley, as personal representative of the estate of Brandon Kyle Begley ("Creditor"), sued Soul Quest and Debtor for wrongful death and was awarded a $15 million judgment, of which $9 million is owed by the Debtor.[8]

*The Parsonage*

In addition to his salary, Soul Quest provided Debtor with a parsonage—a house typically provided by a church for its pastor.[9] Instead of providing living quarters on the church's property, Soul Quest provided Debtor with a monthly allowance for housing expenses.[10] Debtor received $58,022 per year from Soul Quest for his parsonage.[11]

Debtor used his parsonage for the home at 2549 Rose Spring Drive, Orlando FL ("Property"). Debtor paid an initial $10,000 down payment from his own funds.[12] Each month thereafter, Debtor used the parsonage allowance from Soul Quest to make the monthly mortgage and expense payments.[13] As of the petition date, 59 monthly payments were made toward the mortgage using the parsonage allowance.[14]

---

[6] See *Soul Quest Church of Mother Earth, Inc. v. Att'y Gen., United States*, 92 F.4th 953, 956 (11th Cir. 2023) and *Soul Quest Church of Mother Earth, Inc. v. U.S. Drug Enforcement Agency*, 2024 WL 806198 (11th Cir. Feb. 27, 2024).

[7] Doc. No. 54, Exh. F; Soul Quest Bankruptcy Doc. No. 4.

[8] Doc. No. 54, Exh. F and Exh. G.

[9] Doc. No. 50, Exh. A (Affidavit of Christopher Young).

[10] Doc. No. 50, Exh. A (Affidavit of Christopher Young).

[11] Doc. No. 50, Exh. A (Affidavit of Christopher Young and attached Exh. 2)

[12] Doc. No. 50.

[13] Doc. No. 50, Exh. A (Affidavit of Christopher Young). Creditor asserts that Soul Quest made some payments toward the Property directly. Any dispute over this fact is immaterial to the Court's analysis.

[14] Doc. No. 50, Exh. A (Affidavit of Christopher Young).

*Debtor's Chapter 7 Bankruptcy*

Debtor filed a voluntary petition for relief under Chapter 7 on July 18, 2024.[15] In his Schedules, Debtor lists the Property as exempt homestead under Article X, Section 4 of the Florida Constitution.[16] Creditor filed Amended Objections to Claims of Exemption ("Objection") objecting to every listed exemption including Debtor's attempt to exempt the Property as homestead.[17] Thereafter, Debtor and Creditor filed cross motions for summary judgment as to the Objection, along with supporting affidavits, papers, transcripts, responses and replies to their respective positions.[18]

<u>Analysis</u>

Federal Rule of Civil Procedure 56(a), made applicable by Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party "always bears the initial responsibility" of informing the court of the basis of its motion and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A "material" fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine" dispute means that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-250 (internal citations omitted). Once the moving party has

---

[15] Doc. No. 1.
[16] Doc. No. 1.
[17] Doc. No. 37.
[18] Doc Nos. 50, 54, 55, 57, 60, 61. The Court considered argument of the parties on the motions at the hearing on November 20, 2025.

met its burden, the nonmovant must "show that specific facts exist that raise a genuine issue for trial." *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010).

*Homestead Exemption*

Creditor argues that Property is not protected by the homestead exemption because it was purchased using funds obtained from the illegal sale or distribution of ayahuasca. In Florida, a debtor's homestead is exempt from execution by a creditor except in the case of three enumerated exceptions, i.e. "the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty…" Fla. Const. Art. X, § 4. A broad and liberal application of the homestead exemption is well-established in Florida law as a means to protect the family home. And yet, Florida courts have cautioned this application should not allow the homestead exemption to be an instrument of fraud. *See Havoco of America, Ltd. v. Hill*, 790 So. 2d 1018, 1020-21 (Fla. 2001). Still, the broad and constitutional nature of Florida's homestead exemption requires that any exceptions be subject to strict construction. *Id.*

In *Havoco*, the Florida Supreme Court held that this constitutional exemption protected the homestead even when the homeowner transferred non-exempt assets into the homestead with the intent to hinder, delay or defraud creditors. *Id.* at 1030. The court noted, however, not all funds transferred into the homestead with fraudulent intent are protected. The court stated:

> The transfer of non-exempt assets into an exempt homestead with the intent to hinder, delay, or defraud creditors is not one of the three exceptions to the homestead exemption provided in article X, section 4. Nor can we reasonably extend our equitable lien jurisprudence to except such conduct from the exemption's protection. We have invoked equitable principles to reach beyond the literal language of the exceptions only where funds obtained through fraud or egregious conduct were used to invest in, purchase, or improve the homestead.

5

*Id.* at 1028. Consistent with *Havoco*, the Eleventh Circuit Court of Appeals has held that funds obtained by fraudulent transfer are sufficient "fraud or egregious conduct" to support an equitable lien when the fraudulently transferred funds are used to invest in, purchase or improve a homestead. *LaMarca v. Jansen (In re Bifani)*, 580 F. App'x. 740, 747 (11th Cir. 2014).[19] This exception has been narrowly construed and creditors seeking to impose a lien must meet a high standard. *See In re McClung,* 327 B.R. 690, 693 (Bankr. M.D. Fla. 2005). *See also In re Abrass*, 268 B.R. 665, 683 (Bankr. M.D. Fla. 2001)("Courts imposing equitable liens on homestead property require a very high standard.")

Imposition of an equitable lien is a remedy designed to prevent unjust enrichment. *See Palm Beach Sav. & Loan Ass'n, F.S.A. v. Fishbein*, 619 So. 2d 267, 270 (Fla. 1993) (when imposing equitable liens, courts should focus on whether the party claiming the homestead exemption would be unjustly enriched). Unjust enrichment is the key distinction in *Havoco*. An equitable lien on homestead is permitted only when funds used to invest in, purchase, or improve the home were *obtained* through fraud or egregious conduct. Contrast this with the situation in *Havoco* where the homeowner obtained the funds through no improper conduct—the funds rightfully belonged to the debtor—but the alleged fraud was the conduct of investing the funds into the homestead to protect the funds from creditors. Under the *Havoco* facts, there was no unjust enrichment because the homeowner rightfully possessed the funds from the start and the court held that creditors were not entitled to an equitable lien. "The key is how the monies were obtained, not how they were used." *In re Cameron*, 359 B.R. 818, 822 (Bankr. M.D. Fla. 2006). Hence, Creditor

---

[19] Cases finding an exception to the homestead exemption for fraud or egregious conduct have nearly always been in the context of a request for imposition of an equitable lien as opposed to an objection to the homestead exemption as Creditor has filed here. The distinction is logical considering the exception is designed to prevent unjust enrichment and specific funds must be identified and traced to investment in, purchase or improvement of the homestead. The Court doubts that the same argument can be used to deny the homestead exemption in its entirety. Because Creditor cannot satisfy the burden for an equitable lien in any event, the Court need not to decide this issue.

must establish that the funds were obtained through fraud or egregious conduct and then trace those funds into an investment in, purchase, or improvement of the homestead.

Tracing the disputed funds into the Property is simple. Debtor admits his parsonage from Soul Quest paid all the mortgage payments and expenses for the property since its purchase. In total, approximately 59 payments were made prepetition.[20] Debtor disputes that such funds could be considered an investment, purchase, or improvement of the Property citing to this Court's opinion in *In re McGrory*, where the Court ruled that three payments toward a debtor's mortgage are insufficient to support a claim that funds were used to purchase, improve, or invest in homestead property. 625 B.R. 783 (Bankr. M.D. Fla. 2021). In *McGrory*, the Court based its opinion, in part, on the conclusion that three mortgage payments added little if any value to debtor's interest in the homestead and did not improve it. *Id.* at 790-791. The Court cannot say the same in this case. Debtor admits 59 payments were made toward the mortgage and the same number of payments towards maintenance and upkeep. Debtor even admits the mortgage payments reduced the principal by approximately $50,000.[21] Accordingly, the Court concludes that the parsonage payments can be traced into the homestead.

Even though the parsonage payments can be traced into the homestead, Creditor's argument must still fail because the funds in question were not obtained through fraud or the type of egregious conduct this exception was designed to combat. Creditor argues that the parsonage payments from Soul Quest were obtained through the illegal distribution of ayahuasca and that this illegal activity satisfies the requirement that the funds be obtained through fraud or egregious conduct. Creditor further argues that the Court must consider the equities in allowing Debtor to

---

[20] Doc. No. 50, Exh. A (Affidavit of Christopher Young at ¶¶10 and 24).
[21] Doc. No. 50, Exh. A (Affidavit of Christopher Young at ¶24).

profit through the illegal sale of ayahuasca. But Creditor's argument misses the point of the equitable lien exception. It is not enough to say that the funds resulted from illegal conduct. The key distinction here is how the funds were obtained. Debtor was entitled to the funds as an employee of Soul Quest. He performed services for Soul Quest to receive those funds and there was nothing improper in Soul Quest compensating him. The payment of Debtor was not the result of fraud or egregious conduct, but part of his compensation. Further, the key to unlocking the fraud exception to the homestead exemption is unjust enrichment—did the debtor wrongfully obtain funds through fraud or egregious conduct? While perhaps the illegal sale of ayahuasca is egregious conduct, that is not how Debtor obtained the parsonage payment.[22] There is no argument that Debtor embezzled or stole the funds from Soul Quest. Nor is there any argument that attendees of the Soul Quest's retreats were defrauded or otherwise cheated out of their money. Instead, they voluntarily paid funds to Soul Quest even if that transaction included the illegal distribution of ayahuasca.

Creditor can cite to no authority, and the Court is not aware of any, that provides an exception to the homestead exemption under these circumstances. Creditor appears to advance something akin to forfeiture—the loss of homestead property associated with or purchased with proceeds of criminal conduct—which has been rejected in Florida. *See Butterworth v. Caggiano*, 605 So. 2d 56 (Fla. 1992)(Florida Constitution prohibits forfeiture of homestead used in criminal activity); *Tramel v. Stewart*, 697 So. 2d 821, 824 (Fla. 1997)(Florida's Constitution prohibits forfeiture of homestead when criminal proceeds are used to purchase or invest in property). The relevant case law repeatedly recognizes this distinction. In *In re Financial Federated Title and Trust, Inc.*, the bankruptcy trustee sought to impose an equitable lien on money realized in a Ponzi

---

[22] Creditor argues that Soul Quest is not a legitimate church and that these payments are not a parsonage, but that distinction is immaterial. The material fact is that Soul Quest voluntarily compensated Debtor.

scheme that was then used to buy a home for the debtor's president. 347 F.3d 880 (11th Cir. 2003). The Eleventh Circuit reinforced the distinction that forfeiture cases do not involve "efforts by creditors to recover fraudulently obtained or stolen funds which were used to purchase or improve homestead property." *Id.* at 889. Neither does this case.

Considering the undisputed facts involved, Creditor's argument must fail as a matter of law. Creditor cannot meet the high standard required to impose an equitable lien on homestead property. Debtor is entitled to summary judgment overruling the objection to his homestead exemption.

*Other Objections*

Creditor has also objected to every other exemption asserted by Debtor. Debtor exempts his wedding band, household items, some web domains and $75 in cash under Florida's personal property exemption.[23] Debtor also exempts $16,549 in a Chase bank account ("Chase Bank Account") under Florida's exemption for wages earned by a head of household. Fla. Stat. § 222.11(c)(3).[24] Little explanation is provided in the Objection regarding the grounds except to recite the facts regarding the homestead exemption and to state that the schedules do not provide enough information regarding the ownership of the property and source.

Creditor's Motion for Summary Judgment addresses only the head of household wage exemption. Creditor argues that Debtor controls Soul Quest and therefore controls his income, the transfers from Soul Quest to Debtor's account are irregular, and the funds have been commingled. In response, Debtor argues that a three-person board sets his salary and because Soul Quest is a non-profit, the compensation can only be considered exempt wages.[25] To exempt wages as a head

---

[23] Doc. No. 1, Schedule C. Debtor cites Florida Constitution, Article X, Section 4(a)(2).
[24] Doc. No. 1.
[25] Doc. No. 57, pg. 3.

of household, a debtor must perform personal services for the business and receive regular compensation, usually under an arms-length employment agreement. *See In re McDermott*, 425 B.R 848, 851 (Bankr. M.D. Fla. 2010) ("A debtor who owns and runs his own business, without an arms-length employment agreement, and who has almost complete control and discretion over the timing and amount of his own compensation, cannot rely on Section 222.11 to exempt the funds."). Debtor has cited no authority supporting an argument that wages are automatically exempt when received from a non-profit. Further, the bank statements demonstrate some irregularity in the receipts from Soul Quest.[26] Accordingly, a genuine dispute of material fact exists regarding the level of control Debtor possessed over the compensation received from Soul Quest. Summary judgment is not appropriate.

Creditor has presented no basis in law or fact to object to the remaining exemptions and appears to have abandoned his arguments by not addressing them in his Motion for Summary Judgment. Accordingly, summary judgment is appropriate for Debtor as to the remaining exemptions.

For the reasons set forth above, Debtor's Motion for Summary Judgment (Doc. No. 50) is GRANTED, and Creditor's Objection is overruled as to the homestead exemption. Creditor's Motion for Summary Judgment (Doc. No. 54) is DENIED as to the homestead exemption and exemption of the Chase Bank Account. Except for the Chase Bank Account, Summary Judgment for Debtor is GRANTED and Creditor's Objection is overruled as to all remaining objections. The Court will conduct a trial as to the exemption of the Chase Bank Account. A separate trial order will issue.

Attorney Lawrence M Kosto is directed to serve a copy of this order on all interested parties who are non-CM/ECF users and file a proof of service within 3 days of entry of the order.

---

[26] Doc. No. 54, Exh. O.